USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/12/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X
                                     :

AKEEM SHERIFF,                   :

                                       :

                   Petitioner,   :              1:26-cv-1092-GHW

                                       :

              -v-               :            MEMORANDUM
                                     :        OPINION & ORDER

LAWRENCE CATLETTI, *et al.*,      :

                                       :

                 Respondents.   :

                                       :
----------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

Petitioner Akeem Sheriff, a lawful permanent resident, returned to the United States after a short trip to St. Lucia. He was detained at John F. Kennedy International Airport by U.S. Customs and Border Protection ("CBP") upon arrival and was not permitted to enter the country. CBP did not allow Mr. Sheriff to enter the country because he had been convicted of several counts of petit larceny. Mr. Sheriff now petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that his continued detention violates his right to due process. Because of his criminal convictions, Mr. Sheriff is regarded as "seeking admission" to the United States despite his lawful permanent resident status and therefore is properly detained under Section 1225(b)(2)(A), and his petition is DENIED.

## I.     BACKGROUND

Mr. Sheriff, a citizen of Trinidad and Tobago, was granted lawful permanent resident status in the United States on July 18, 2007. Dkt. No. 1 ("Pet.") ¶¶ 15–16. Between 2017 and 2021, Mr. Sheriff was arrested ten times and charged with various offenses, including criminal possession of controlled substances, robbery, menacing, petit larceny, and criminal possession of a weapon. *Id.* ¶ 17, Ex. A; Dkt. No. 13 ("Paulino Decl.") ¶ 7; Dkt. No. 14, Ex. B. In 2021, Mr. Sheriff was

convicted of petit larceny and served eight months in prison.  Pet. ¶ 18.

Mr. Sheriff took a five-day trip to St. Lucia and returned to the United States on October 28, 2025.  *Id.* ¶ 20; Paulino Decl. ¶ 10;  Dkt. No. 14, Ex. C at 9.  CBP detained Mr. Sheriff at John F. Kennedy International Airport ("JFK") and served him with a Notice to Appear ("NTA").  Paulino Decl. ¶ 10.  The NTA identified him as "an arriving alien"[1] and charged him as inadmissible under Section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA") based on his petit larceny convictions.  *Id.*; Dkt. No. 14, Ex. D at 2, 5.  Mr. Sheriff was not admitted to the United States, and CBP took him into custody to be detained pending removal proceedings.  Paulino Decl. ¶ 10.

On December 29, 2025, an immigration judge sustained the charge on the NTA, denied Mr. Sheriff's application for cancellation of removal as a matter of discretion, and ordered him removed to Trinidad and Tobago.  *Id.* ¶ 13.  On December 31, 2025, Mr. Sheriff timely appealed the removal order to the Board of Immigration Appeals, where his appeal remains pending.  *Id.* ¶ 14.  On February 9, 2026, Mr. Sheriff filed this petition for a writ of habeas corpus, asserting that his detention violates his due process rights under the Fifth Amendment.  Pet. at 7–8.

## II.    LEGAL STANDARD

Mr. Sheriff brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241.  Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention."  *Lopez v. Sessions*, No. 18 CIV. 4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).  "Jurisdiction over 28 U.S.C. § 2241 habeas petitions is properly

---

[1] Department of Homeland Security ("DHS") regulations define an "arriving alien," in relevant part, as "an applicant for admission coming or attempting to come into the United States at a port-of-entry."  8 C.F.R. § 1.2.

limited to purely legal statutory and constitutional claims and does not extend to review of discretionary determinations by immigration judges." *Id.* (quotation and brackets omitted). The Court must "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III.    DISCUSSION

### A.    Petitioner is Lawfully Detained Pursuant to Section 1225(b)(2)(A)

Mr. Sheriff is lawfully detained under Section 1225(b)(2)(A) because he is an "applicant for admission" who is "seeking admission" and was determined to be "not clearly and beyond a doubt entitled to be admitted."[2]  Under Section 1225(a)(1) of the INA, "[a]n alien . . . who arrives in the United States . . . whether or not at a designated port of arrival" is deemed an "applicant for admission."[3]  8 U.S.C. § 1225(a)(1).  Section 1225(b)(2)(A), in turn, provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for removal proceedings.  *Id.* § 1225(b)(2)(A).  Section 1225(b)(2)(A) "applies only to a noncitizen who is both an 'applicant for admission' and who is 'seeking admission.'"  *Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *5 (2d Cir. Apr. 28, 2026).  The phrase "seeking admission" in Section 1225(b)(2)(A) means "requesting lawful entry into the United States after inspection and authorization."  *Id.* at *23.

Section 1101(a)(13)(C) of the INA provides that a lawful permanent resident "shall not be regarded as seeking an admission" unless he falls into one of six enumerated categories:

> (C) An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the

---

[2] The Government asserts that although Mr. Sheriff's detention is principally governed by Section 1225(b)(2)(A), Section 1226(c)(1)(A) supplies an additional, secondary source of detention authority.  *See* Dkt. No. 15 at 8–9.  Because the Court concludes that Mr. Sheriff is lawfully detained pursuant to Section 1225(b)(2)(A), it need not decide whether Section 1226(c)(1)(A) also independently authorizes his detention.

[3] "The term 'alien' means any person not a citizen or national of the United States."  8 U.S.C. § 1101(a)(3).

immigration laws unless the alien–

(i) has abandoned or relinquished that status,

(ii) has been absent from the United States for a continuous period in excess of 180 days,

(iii) has engaged in illegal activity after having departed the United States,

(iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings,

(v) has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title, or

(vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

8 U.S.C. § 1101(a)(13)(C)(i)–(vi).

Subsection (v) applies to aliens who have "committed an offense identified in section 1182(a)(2)." *Id.* § 1101(a)(13)(C)(v). Section 1182(a)(2) identifies, among other offenses, "acts which constitute the essential elements of . . . a crime involving moral turpitude." *Id.* § 1182(a)(2)(A)(i)(I). Petit larceny is a crime involving moral turpitude. *Ferreiras Veloz v. Garland*, 26 F.4th 129, 130 (2d Cir. 2022). Thus, a lawful permanent resident who has committed petit larceny is regarded as "seeking an admission" when seeking to reenter the United States. *See Centurion v. Sessions*, 860 F.3d 69, 76 (2d Cir. 2017) ("Section 1101(a)(13)(C)(v) forces a lawful permanent resident to seek admission when he 'has committed an offense identified in section 1182(a)(2) of this title.'" (emphasis omitted)).

Mr. Sheriff satisfies each requirement of Section 1225(b)(2)(A). He is, by definition, an "applicant for admission" because he "arrive[d] in the United States . . . at a designated port of arrival" after returning from a trip abroad. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("When an alien arrives at a port of entry—for example, an international airport—the

4

alien is on U. S. soil, but the alien is not considered to have entered the country . . . .").  As a lawful permanent resident, Mr. Sheriff ordinarily would not be regarded as "seeking admission."  However, due to his convictions for petit larceny—an offense identified in Section 1182(a)(2)—Mr. Sheriff falls into the fifth category of Section 1101(a)(13)(C) and is therefore regarded as "seeking admission," notwithstanding his lawful permanent resident status.  Once CBP determined that he was "not clearly and beyond a doubt entitled to be admitted" due to his criminal convictions, Section 1225(b)(2)(A) mandated his detention.  *See* 8 U.S.C. § 1225(b)(2)(A).

Section 1101(a)(13)(C) does not grant DHS discretion to decide whether an alien who falls into one of the enumerated categories is regarded as "seeking admission"; the designation is automatic.  Mr. Sheriff argues that Section 1101(a)(13)(C) "delegates discretionary authority to the Department of Homeland Security."  Dkt. No. 16 at 7.  He reads the word "unless" in Section 1101(a)(13)(C) as creating "a necessary, not a sufficient condition" for the "seeking admission" designation, such that a lawful permanent resident "*cannot* be regarded as seeking admission unless the noncitizen falls in one of the categories enumerated under § 1101[(a)](13)(C)," but if the lawful permanent resident falls within an enumerated category, "then he or she *may* be regarded as seeking admission."  *Id.*  This argument is not supported by the statutory text or any case interpreting it.

The Court begins the task of statutory interpretation by "examining the language of [the] statute, starting with the common meaning of the words in it."  *Cunha*, 2026 WL 1146044, at *3 (quoting *Puello v. Bureau of Citizenship & Immigr. Servs.*, 511 F.3d 324, 328 (2d Cir. 2007)).  The words of the statute are interpreted "not in a vacuum, but with reference to the statutory context, structure, history, and purpose."  *Id.* (quoting *Abramski v. United States*, 573 U.S. 169, 179 (2014)).  "When the statutory text is plain and unambiguous, [the court's] sole function is to enforce it according to its terms."  *Id.* (quoting *United States v. Bedi*, 15 F.4th 222, 226 (2d Cir. 2021)).  "If the statutory language is ambiguous, however, [the court] resort[s] first to canons of statutory construction, and, if the

5

statutory meaning remains ambiguous, to legislative history, to see if these interpretive clues clearly

reveal Congress's intent." *Id.* (quoting *Mizrahi v. Gonzales*, 492 F.3d 156, 158 (2d Cir. 2007)).

Mr. Sheriff cites no authority in support of his reading of the statute, which is inconsistent

with the way that the Supreme Court and the Second Circuit have described its operation. *See*

*Vartelas v. Holder*, 566 U.S. 257, 263 (2012) ("[L]awful permanent residents are regarded as seeking

admission into the United States if they fall into any of six enumerated categories."); *Centurion*, 860

F.3d at 72 ("[U]nder 8 U.S.C. § 1101(a)(13)(C)(v), a lawful permanent resident must seek formal

admission—even if returning from a brief trip abroad—if he has committed a drug offense or a

crime of moral turpitude.").

The Board of Immigration Appeals ("BIA") sitting en banc decided this exact issue in 1998

and explicitly rejected Mr. Sheriff's reading of the statute. *See In re Collado-Munoz*, 21 I. & N. Dec.

1061 (BIA 1998) (en banc). The BIA reasoned that Section 1101(a)(13)(C), which sits in the INA's

"Definitions" section, is definitional in character and does not authorize the case-by-case

determinations that Mr. Sheriff's reading would require:

> We read [Section 101(a)(13)(C) of the INA[4]], in keeping with its definitional character, to create a dichotomy. It specifies a general rule that an alien lawfully admitted for permanent residence is not regarded as seeking admission. It then specifies the exceptions to the general rule, specifically, the circumstances under which a lawful permanent resident will be regarded as seeking an admission. In our judgment, it would be inconsistent with the definitional nature of this provision to read it, as does the dissent, to create either a third category or an undefined second category of lawful permanent residents who may or may not be regarded as seeking an admission, depending on a wholly unspecified set of criteria that, presumably, would be developed by case-by-case adjudication. Rather, we find that the plain language of this definitional provision compels the finding that, under section 101(a)(13)(C)(v) of the Act, a lawful permanent resident who has committed an offense identified in section 212(a)(2), who has not since such time been granted relief under sections 212(h) or 240A(a) (to be codified at 8 U.S.C. § 1250a(a)), who departs the United States and returns, shall be regarded as seeking an admission into the United States despite his lawful permanent resident status.

---

[4] Section 101(a)(13)(C) of the INA is codified at 8 U.S.C. § 1101(a)(13)(C).

*Id.* at 1064 (footnote omitted).  The BIA thus read Section 1101(a)(13)(C) as dictating one of two outcomes for a lawful permanent resident:  he shall not be regarded as seeking admission if he does not fall within an enumerated category and shall be regarded as seeking admission if he does.  That mechanistic operation of the statute is unsurprising in light of the context in which Section 1101(a)(13)(C) was enacted.[5]

Mr. Sheriff's reading is also inconsistent with the statute's plain meaning.  "Seeking admission" means "requesting lawful entry into the United States after inspection and authorization."  *See Cunha*, 2026 WL 1146044, at *23.  A returning lawful permanent resident who presents himself for inspection at a port of entry such as an international airport is, by definition, "seeking admission."  Section 1101(a)(13)(C) functions as a shield for lawful permanent residents in that situation:  they "shall not be regarded as seeking an admission" *unless* they fall into one of the enumerated categories.  8 U.S.C. § 1101(a)(13)(C).  "Unless" means "except on the condition that." *Unless*, Merriam-Webster, https://www.merriam-webster.com/dictionary/unless (last visited May 12, 2026).  The statute therefore means that a returning lawful permanent resident shall not be regarded as seeking admission *except on the condition* that he falls within one of the enumerated categories.  If he does, Section 1101(a)(13)(C)'s shield falls, leaving the lawful permanent resident in

---

[5] Before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), the INA defined "entry" as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession" but provided that a lawful permanent resident "shall not be regarded as making an entry into the United States" if he could show that his departure "was not intended or reasonably to be expected."  *See* 8 U.S.C. § 1101(a)(13) (1994).  In *Rosenberg v. Fleuti*, the Supreme Court construed this exception to hold that a lawful permanent resident returning from abroad was not subjected to the consequences of a new "entry" unless he intended "to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence."  374 U.S. 449, 462 (1963).  Whether such intent could be inferred turned on factors including the length of the absence and its purpose.  *Id.*

IIRIRA replaced this framework, substituting the concept of "entry" with that of "admission" and discarding the *Fleuti* intent inquiry in favor of a mechanistic test based on the six enumerated categories contained in the statute. *See* 8 U.S.C. § 1101(a)(13)(A), (C); H.R. Rep. No. 104-469, pt. 1, at 225–26 (1996) (explaining that the amendment "preserves a portion of the Fleuti doctrine" by specifying the conditions under which a returning lawful permanent resident "shall not be regarded as seeking admission" but "intends to overturn certain interpretations of Fleuti" through enumerated rules defining when a lawful permanent resident "is seeking admission").  Congress thus moved deliberately from a discretionary, fact-bound standard to a concrete, mechanistic one.  Reading Section 1101(a)(13)(C) to require the sort of case-by-case determination characteristic of the pre-IIRIRA regime would reintroduce precisely the framework Congress legislated away.

his default posture: seeking admission. The statute operates automatically, without any further determination by DHS.

That is what happened here. Mr. Sheriff arrived at JFK and requested lawful entry into the United States. He was therefore "seeking admission." As a lawful permanent resident, he would ordinarily be protected by Section 1101(a)(13)(C) and not regarded as seeking admission. But because Mr. Sheriff fell within Section 1101(a)(13)(C)(v) by virtue of his criminal conduct while in the United States, the shield fell, and—like any alien requesting lawful entry into the United States— he was regarded as seeking admission.

Other provisions of the INA confirm this reading. Where Congress intended to confer discretion in the INA, it did so expressly. *See, e.g.*, 8 U.S.C. § 1182(h) ("The Attorney General *may*, *in his discretion*, waive . . . ." (emphasis added)); 8 U.S.C. § 1229b(a) ("The Attorney General *may* cancel removal . . . ." (emphasis added)). Section 1101(a)(13)(C) contains no such language. The plain meaning and context of Section 1101(a)(13)(C) therefore show that the statute does not delegate discretion to DHS; a lawful permanent resident who falls into one of the six enumerated categories is regarded as "seeking admission" automatically.

### B.   Petitioner's Detention Comports with Due Process

At the time Mr. Sheriff filed his petition, his detention did not violate due process. "Aliens, of course, are entitled to due process." *Zheng v. Mukasey*, 552 F.3d 277, 286 (2d Cir. 2009) (quoting *Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007)). "[T]he Fifth Amendment entitles noncitizens to due process of law," "whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Demore v. Kim*, 538 U.S. 510, 523 (2003); then citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). The Supreme Court has "repeatedly—and recently—reiterated this principle." *Munoz Materano v. Arteta*, No. 25 Civ. 6137, 2025 WL 2630826, at *12 (S.D.N.Y. Sept. 12, 2025) (citing

*Trump v. J.G.G.*, 604 U.S. 670, 673 (2025)).

But applicants for admission "stand[] on a different footing." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). For an applicant for admission like Mr. Sheriff, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Id.* (quotation omitted); *see also Augustin v. Sava*, 735 F.2d 32, 36 (2d Cir. 1984) ("Although aliens who petition for admission have no constitutional rights regarding their applications, they do have such statutory rights as Congress grants."); *Velasco Lopez*, 978 F.3d at 848 ("Detention during removal proceedings is a constitutionally valid aspect of the deportation process."). And, as relevant here, for those noncitizens "subject to mandatory detention under Section 1225(b), 'an immigration judge "may not" conduct a bond hearing to determine whether an arriving alien should be released into the United States during removal proceedings.'" *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 205 (S.D.N.Y. 2020) (quoting *Lopez*, 2018 WL 2932726, at *4); 8 C.F.R. § 1003.19(h)(2)(i)(B). Indeed, "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).

Because Mr. Sheriff is detained under Section 1225(b)(2)(A), the process he was due upon his detention was the process Congress provided, which did not include a bond hearing. Therefore, at the time he filed his petition, his detention without a bond hearing did not violate due process.[6]

### IV.    CONCLUSION

For the foregoing reasons, Mr. Sheriff's petition for a writ of habeas corpus is DENIED.

---

[6] After his petition was fully briefed, Mr. Sheriff submitted a letter raising a new ground for potential relief: "Petitioner has now been detained over six months by DHS. Disregarding whether Petitioner is detained pursuant to 8 U.S.C. § 1225 or § 1226, Petitioner respectfully states that under the [*Mathews*] *v. Eldridge* balancing test, he is entitled to an individualized bond hearing." Dkt. No. 17 at 1. Because Mr. Sheriff did not raise this ground in his habeas petition, the Court does not address it here. Mr. Sheriff is free to raise this new ground for relief in a separate habeas petition should he wish to do so.

The Clerk of Court is directed to enter judgment for Respondents and to close this case.

    SO ORDERED.

Dated: May 12, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge

10